**GOVERNMENT OF THE VIRGIN ISLANDS
IN THE INTEREST OF K.O., Minor**

Family Division Juvenile No. 141/2004

Territorial Court of the Virgin Islands

Division of St. Thomas and St. John

December 14, 2004

DOUGLAS L. DICK, ESQUIRE, Assistant Attorney General, Department of Justice, St. Thomas, Virgin Islands, *Attorney for Plaintiff.*

STEPHEN A. BRUSCH, The Brusch Law Firm, St. Thomas, Virgin Islands, *Attorney for Defendant.*

KENDALL, *Family Court Judge*

## MEMORANDUM AND OPINION

(December 14, 2004)

### I. INTRODUCTION

THIS MATTER came on for hearing on November 24, 2004 for Dr. Sharon McCollum-Rogers, Principal of the Ivanna Eudora Kean High School, Mr. William Frett, Insular Superintendent of the St. Thomas-St. John School District and Honorable Noreen Michael, Commissioner, Department of Education, to show cause why they should not be held in contempt for failing to comply with this Court's oral Order of October 19, 2004 and its "Amended Memorandum and Order" of October 25, 2004.

The Principal and Superintendent appeared and were represented by Assistant Attorneys General Douglas Dick and Delia Smith. The minor, who appeared with his mother, was represented by Assistant Territorial Public Defender Julie Smith-Todman and Attorney Stephen Brusch.

Pending before the Court was a letter from the Commissioner dated November 24th, 2004 requesting that she be excused from the hearing because of prior commitments off-island. In support of her request, she submitted her travel itinerary showing that she was in fact scheduled to be off-island during the hearing. The Court will treat her request as a Motion and because it comports with L.R.C. 7.1(d) and for good cause shown, will grant it and excuse her appearance.

Also pending before the Court was a "Notice of Appearance" and "Motion to Continue" filed by the St. Croix law firm of Sanford and Amerling, by Attorney Jessica Gallivan, on behalf of the Principal. In support of the Motion, Counsel stated that she was unable to obtain transportation from St. Croix to appear at the hearing and would not be available until December 1, 2004 due to her attendance at a deposition in Atlanta, Georgia.

The Motion was filed on the day of the hearing and while it would normally be deemed untimely, the Court noted that, given the abbreviated scheduling of the hearing, the Motion will be considered as timely filed. However, in light of the fact that: (1) time is of the essence regarding compliance with the Order; (2) the Principal is an employee of the Government and at every hearing heretofore involving the minor she

was represented by the V.I. Department of Justice through Assistant Attorney General Dick; (3) there is no indication that any attempt was made by the law firm to substitute other Counsel from the firm or on St. Thomas to appear on behalf of the Principal and (4) Assistant Attorney General Dick indicated his willingness and preparedness to continue to represent the Principal, the "Motion to Continue" will be denied and the "Notice of Appearance" will be acknowledged.

The Court heard testimony from the Principal, Insular Superintendent, and three (3) teachers of the minor, (Ms. Teresa Davis, Ms. Deborah Derochet and Ms. Chamika Williams), the minor's mother and Ms. Stacy Kingston, Social Worker, Department of Human Services.

Based upon the testimony of the witnesses, the record herein and the reasons set forth below, the Court finds that the Principal is in contempt of this Court for failure to comply with its oral Order of October 19, 2004 and written Amended Order of October 25, 2004.

## II. BACKGROUND

After a hearing held on October 19, 2004 to determine why the minor was absent from school for a period of approximately two (2) months from the beginning of the current school year, the Court found that the minor's suspension was a *de facto* expulsion in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution and the Rules and Regulations of the V.I. Board of Education. Based upon this finding, the Court, *inter alia,* orally Ordered that: (1) the minor shall return to the Ivanna Eudora Kean High School forthwith; (2) the school shall accept the minor and assist him in receiving the class work missed while he was expelled; (3) the Department of Human Services shall provide him with any necessary medical attention and other services deemed appropriate and (4) he shall be allowed to remain on the school's campus without unnecessary hardship.

October 20th, the day after the hearing, it appeared that the Principal openly defied the Court's Order and, perhaps acting in concert with others, caused the school to be closed for three (3) days, in an attempt to prevent the minor from returning to school as Ordered. The closing of the school caused an uproar in the community and resulted in a march by the teachers, students and others on the Legislature, the Government House and the Court protesting the Court's Order.

On October 25th, the Court reduced its Order to writing, setting forth its reasons therefor in an "Amended Memorandum and Order" dated October 25, 2004. The Court Ordered that: (1) "The Principal and the school's administration shall immediately implement the minor's class schedule and his classroom assignments and shall make all necessary arrangements for the minor to make up all missed classes; (2) The minor shall immediately return to the Eudora Kean High School and shall comply with all rules and regulations, including the school's dress code; (3) The Principal and the school's administration shall comply with the Rules and Regulations of the Board of Education; (4) the Department of Human Services, in coordination with the Principal and the school's administration, shall provide the minor with such assistance and counseling as is deemed necessary and (5) the Principal and the school's administration shall take all necessary measures to protect the minor from harassment, intimidation, unnecessary interference and hardship in completing his studies at the school in light of the notoriety of the case". Copies of the Order were personally served on the affected parties, including the Principal, the Insular Superintendent and the Commissioner by the Territorial Marshal.

On November 18, 2004, while in attendance at school, the minor was illegally searched and arrested by the school's monitor, Mr. Juniel Charleswell, Sr., for possession of a controlled substance, to wit, marijuana in violation of Title 19 V.I.C. § 607(a). The following day, he was brought before this Court to be advised of his rights. After hearing the testimony of Mr. Charleswell who stated that he seized the contraband from the minor's backpack, the Court had no trouble whatsoever in concluding that the search and seizure of the minor's person and personal belongings were illegal since there was no legal basis whatsoever for the search. Without such reasonableness and legality, Mr. Charleswell violated the minor's rights against unlawful search and seizure as set forth in the 4th Amendment to the U.S. Constitution and as interpreted by the United States Supreme Court in *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985). Having determined that the minor's search and arrest were unreasonable and illegal, the Court released him forthwith.

Based upon what appeared to be the Principal's open defiance of the Court's oral Order and the timing of the search and arrest of the minor

while attending classes, the Court scheduled this hearing to inquire into the parties' compliance with its Orders.

## III. ANALYSIS

The Court adopts the "Findings of Fact" and "Conclusions of Law" set forth in its "Amended Memorandum and Order" and repeats the same herein as if recited verbatim.

### 1. Contempt

■ It is settled that "the Power to punish for contempt is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings and to the enforcement the judgments, orders, and writs of the court, and consequently to the due administration of justice." *Ex Parte Robinson*, 19 Wall (86 U.S.) 505, 22 L. Ed. 205 (1874). Consistent with this established principle, the V.I. Legislature enacted contempt provisions which are codified at Title 4 V.I.C. §§ 244, 281-82 as follows:

### § 244 Contempt of Court.

Any person who willfully violates, neglects or refuses to observe or perform any lawful order of a court shall be guilty of contempt of court and upon being found guilty of such contempt may be punished as provided by law.

### § 281 Powers of Judicial Officers as to Conduct of Proceedings.

Every judicial officer shall have power:

...

    (2)   To compel obedience to his lawful orders;

Based upon the foregoing, the Court's authority to proceed in this matter is well settled.

### 2. The Order to accept the minor back to the Ivanna Eudora Kean High School.
#### The Principal's absence.

In defending herself against the implication that she was absent from school for three (3) days to avoid complying with the Court's Orders, the Principal testified that she did not go to school on October 20, 2004 because she was upset, nervous and confused when she left Court the

previous evening. She later testified, however, that she did go to school that day to meet with the teachers for approximately forty-five (45) minutes. She also testified that she met with Lt. Governor Vargrave Richards and the Superintendent at the school on October 22, 2004.

The Principal's presence at school on October 20, 2004 to meet with the staff is contrary to her testimony that she "did not go to school" on that day. Such presence and her presence on October 22, 2004 for further meetings are also inconsistent with any serious illness warranting her absence from school. The Court finds that the only plausible reason for her meeting with the staff was to apprise them of the Court's Order and her obligation thereto.

Additionally, the Court finds that there is no merit to the Principal's testimony that she did not report to school for three (3) consecutive days after receiving the Court's oral Order on October 19, 2004 due to sickness. Chapter 25, subchapter 452, Division 13 of the Code of the U.S. Virgin Islands Rules (C.V.I.R.) provides in pertinent part:

### § 452-382 Proof of Sickness.

(d) Proof of sickness for absence of two or more consecutive days, ... shall include a certificate from a practicing physician indicating that the employee has been under his or her care and specifying the dates upon which the employee was incapacitated for work ...

The Principal offered no proof of her sickness as required by the foregoing rule. In the absence of such proof, the Court is constrained to reject her testimony as self-serving at best. At worst, it is nothing more than a transparent attempt to justify her refusal to obey the Court's oral Order by absenting herself from school, except for the two meetings.

3. **The Order that the Principal and the school's administration shall immediately implement the minor's class schedule and his classroom assignment and shall make all necessary arrangements for the minor to make up his missed classes.**

The Principal testified that on October 20, 2004, she instructed her assistant, Dr. Leroy Trotman, to take the minor through the orientation process. She further testified that on that day, a registration packet was prepared and a schedule was similarly prepared and printed. The Court questions the accuracy of the Principal's testimony. Since school was

closed on October 20, it is quite unlikely that a registration packet could have been prepared and a schedule prepared and printed. Additionally, both the Principal and the minor's mother testified that registration was not completed until November 10, 2004, due in part to: (1) the school's improper closure; (2) the attempts by the Superintendent and the Principal to place the minor at the Edith Williams Academy; (3) missed school days due to inclement weather and the general elections; (4) illness on the part of the minor due to him being pepper sprayed and (5) completion of the minor's immunization requirements.

With respect to the arrangement for missed classes, the Principal testified that the minor's make-up assignments were placed in her hands on November 23, 2004, the day before this hearing. She further testified that she did not give the teachers a deadline for the compilation of the make-up work. The minor's mother testified that when she met with four (4) of his teachers on November 10, 2004, none of them knew anything about make-up assignments for the minor. She further testified that Dr. Trotman also stated that he knew nothing about any make-up work. On November 23, the day before the hearing, one Ms. Stevens, a school employee, and Ms. Derochet, the minor's Social Studies' teacher, delivered the make-up assignments to the minor's mother at her place of employment.

The Court finds the Principal's inordinate delay in providing the minor with his make-up assignments to be inexcusable and contrary to the implicit command of the Order that "all necessary arrangements for the minor to make up his missed classes" be undertaken. The Court finds that this delay is not only a violation of its Order but that it was also willful and deliberate.

## 4. The Order that the Principal and the school's administration shall take all necessary measures to protect the minor from harassment, intimidation, unnecessary interference and hardship in completing his studies at the school.

### (a) The minor's arrest.

The minor's arrest on November 18, 2004 by Mr. Charleswell was a clear violation of this Order. This arrest and the resulting charge were so transparent as to defy logic and common sense. Mr. Charleswell testified at the minor's "Advice of Rights" hearing that he approached the minor

shortly after classes had commenced upon being informed that the minor had left class. He confronted the minor and asked him where he was going. The minor responded that his teacher sent him to get a pass from the Principal's office. This response was consistent with the testimony of the minor's Social Studies' teacher who testified that shortly after her first period class began, she noticed that the minor did not have a pass and told him to go and get one. Mr. Charleswell testified, however, that the minor was headed toward a remote area on campus where "most likely drugs and everything happens" when he approached him. The testimony made no sense because it is inconceivable that the school's administration, in face of accreditation, and with an accreditation inspection team on the campus, would knowingly allow such an area to exist at the time of inspection, or indeed, at any other time.

Mr. Charleswell further testified that he escorted the minor to the administration office to obtain the pass and upon arrival there, the minor requested to use the telephone to call his mother. Permission was granted and while minor was on the telephone, the monitor unzipped the minor's backpack which was on his back and commenced to search it. After the search, Mr. Charleswell claimed he found a small bag of marijuana. He then had the minor arrested and removed from campus.

The Court found that nothing about the minor's conduct warranted the search of his person or personal belongings. The minor was not engaged in any unlawful conduct or posed any danger to the monitor when he was searched. There was no testimony that the minor was smoking marijuana or that the monitor saw or smelled drugs. Moreover, there was no testimony that Mr. Charleswell felt threatened at any time by the minor or that the minor engaged in any furtive conduct. Indeed, the testimony is clear that the minor was escorted to the administration office without incident and allowed to use the telephone.

The Principal testified that she did not think the search of the minor amounted to harassment but merely overzealousness on the part of the monitor. She further testified that it was a "bad search" but did not believe it was the "fruit of any ill-will".

### (b) Applicable law.

In *New Jersey v. T.L.O., supra*, the U.S. Supreme Court held the 4th Amendment's prohibition against unreasonable search and seizure (applicable to the U.S. Virgin Islands pursuant to Section 3 of the

Revised Organic Act of 1954, as amended) applies to searches of students by school officials. The Court noted that

> The accommodation of the privacy interests of school children with the substantial need for teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. <u>Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances of the search.</u> (emphasis added)

*Id.* at 105 S. Ct. 742. The Court further stated that:

> determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the ... action was justified at its inception," *Terry v Ohio*, 392 U.S., at 20, 88 S. Ct., at 1879; second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place." *Ibid.*

*Id.* Thus, with respect to the search of students, even though "probable cause" is not required, "reasonableness" is the test. Here, the monitor clearly failed that test.

Specifically, when viewed in light of *New Jersey v. T.L.O.*, the search of the minor and his personal belongings did not comport with the standards set forth therein. Clearly, the search of the minor was not justified at its inception. Merely going for a pass as required by the teacher or speaking on the telephone did not justify the search. Nor, as noted heretofore, was the minor engaged in any unlawful conduct or threatening behavior when he was searched. Moreover, there was nothing to justify the search in the first place, hence its scope, by definition, was unreasonable and unrelated to the minor merely being in the office or speaking on the telephone.

### (c) Violation of the Order prohibiting harassment, etc.

The search of the minor was in violation of his right under the Fourth Amendment to be protected against unlawful search and seizure and the Court so found and released him forthwith. The Court finds that the minor's arrest was nothing more than another brazen attempt by the

Principal and those acting in concert with her to violate the Order that he not be harassed while on campus.

Despite the Court's findings that the search was illegal, the Principal, and others acting in concert with her, sent the minor home and initiated suspension proceedings against him.[1] The Principal will undoubtedly be utilizing the "fruit of the poisonous tree" to punish/suspend the minor. The use of such evidence is clearly illegal in a Court of Law and any attempt by the Principal to utilize the "fruit" of the minor's illegal arrest and search to suspend him from school is clearly a further violation of the Order that he be protected from harassment, intimidation, unnecessary interference and hardship in completing his studies.

Accordingly, given: (1) the Principal's open and continuing defiance of the Court's Orders; (2) the monitor's lack of credibility based on his illegal conduct and questionable reputation;[2] (3) the flagrant violation of the minor's constitutional right to be protected against unreasonable searches and seizures and (4) the continuing violation of the minor's liberty interest in his good name and reputation, the Court finds that these factors constitute overwhelming evidence that the Principal and those acting on her behalf willfully violated the Orders prohibiting harassment of the minor.

---

[1] The minor's mother testified that on the day of his arrest, Dr. Trotman told her that the minor will be sent home and there would be a hearing on Tuesday, November 23, 2004. The minor was sent home and given a letter signed by Dr. Trotman proposing a ten (10) day suspension and scheduling a hearing on November 22, 2004. *See,* Minor's Exhibit # 4. The mother, however, testified that she was orally advised that the hearing would occur the following day. She appeared on that day and after waiting for approximately one-half (1/2) hour, Dr. Trotman approached her in a very hostile manner and gave her another letter rescheduling the hearing for November 30, 2004. *See,* Minor's Exhibit # 5.

[2] The Court takes judicial notice that Mr. Charleswell, a former Police Officer, was discharged from duty because of felonious misconduct. The Court further notes that on December 8, 2004, he was arrested and charged with conspiracy, grand larceny, aiding and abetting and contributing to the delinquency of a minor. The charges resulted from the alleged theft of merchandise from the Plaza Extra Supermarket, St. Thomas, by a student attending the very same Ivanna Eudora Kean High School where Mr. Charleswell is employed. Such conduct by him and his general reputation only serve to cast further doubt on his credibility regarding his "discovery" of marijuana in the minor's backpack. Given this conduct and the Principal's open defiance of the Court's Order that the minor return to school, the Court could reasonably infer that not only was the minor entrapped by the monitor but that he could very well have planted the marijuana in the minor's backpack.

## CONCLUSION

■ This is not the case of an honest error on the part of a public official in dispatching her lawful responsibilities consistent with her sworn obligation to obey the law. Rather, this case is about an Ivanna Eudora Kean High School Principal who has taken an oath to uphold the law but who has instead flagrantly violated the law and the Court's Orders enforcing the law. In concert with others, she is depriving the minor of his right to a public education and insists upon continuing to do so despite this Court's Orders that specifically required certain actions by her. Rather than comply, she has engaged in dilatory tactics designed to frustrate the proper enrollment of the minor in school. The Court therefore concludes that the Principal is in contempt of Court for willfully and deliberately ignoring and violating the Orders of this Court. The Court also concludes that any violation of its Orders by the Insular Superintendent and Commissioner was not deliberate.